# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **RICHELLE ANTOINETTE TAYLOR, as Administrator for the Estate of LETORRYNE JAMES TAYLOR,** )<br>)<br>)<br>)<br>) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Civil Action No. 5:22-cv-237-CLS |
| ) | |
| **CHAD BROOKS, *et al.*,** ) | |
| ) | |
| **Defendants.** | |

## MEMORANDUM OPINION & ORDER

Letorryne James Taylor died in the Madison County, Alabama, Jail on February 26, 2020. Plaintiff, Richelle Antoinette Taylor, his mother, as Administratrix for her son's Estate, asserts claims of constitutional violations under 42 U.S.C. § 1983 against defendant Chad Brooks, referred to in the complaint as the "Chief of Corrections/Jail Administrator for the Madison County Sheriff's Office," as well as constitutional and state law claims[1] against Madison County Sheriff's

---

[1] This is the second iteration of this lawsuit. Plaintiff filed an action based upon the same facts on April 27, 2020. *See* Civil Action No. 5:20-CV-467-CLS, doc. no. 1 (Complaint). Plaintiff named Chad Brooks and several fictitious defendants. Plaintiff requested immediate, limited discovery to ascertain the identity of the fictitious defendants. Doc. no. 12. The court granted plaintiff's motion, and ordered Brooks to respond to plaintiff's two interrogatories and one request for production. Doc. no. 19. Brooks complied. Doc. nos. 24, 26. Rather than amending her complaint, plaintiff filed a notice of voluntary dismissal on July 23, 2020, and the court entered an order of dismissal without prejudice on that same date. Doc. nos. 31, 32.

Department detention officers Ryan Byrd, Abraham Lindsey, Wyatt Luster, and Ewen Weber, and nurse Katrina Allen.[2]  Doc. no. 1.  This action is before the court on the motions to dismiss of defendant Chad Brooks (doc. no. 5), and of defendants Ryan Byrd, Abraham Lindsey, Wyatt Luster, and Ewen Weber ("the deputies"[3]) (doc. no. 7), and all defendants' motion to stay discovery (doc. no. 9).  Upon consideration of the complaint and the parties' briefs, the court concludes that the motions to dismiss are due to be granted in part and denied in part, as discussed herein.  Further, plaintiff will be permitted to amend her complaint to address the deficiencies noted below.  The motion to stay will be granted.

## I. PLAINTIFF'S ALLEGATIONS

On February 25, 2020, an individual reported to the 911 emergency service that a man was lying in the road in downtown Huntsville, Alabama.[4]  Huntsville Emergency Medical Services, Inc. ("HEMSI") was dispatched.  Upon their arrival at the scene, paramedics began to assess and treat the man, who subsequently was

---

[2] Plaintiff failed to provide proof of service of the complaint to defendant Katrina Allen. That failure was addressed by separate order.  *See* doc. no. 21.

[3] Plaintiff's complaint refers to those officers as "deputies," but their motion to dismiss uses the term "detention officers."  *See, e.g.*, doc. no. 7, at 2.  This opinion refers to the officers as "deputies."

[4] Doc. no. 1 (Complaint) ¶ 16.

2

identified as Letorryne James Taylor.[5] Mr. Taylor was uncooperative and combative.[6] The paramedics called the City of Huntsville police for assistance.[7] The responding officers arrested Mr. Taylor for second-degree assault, took him into custody, and transported him to the Madison County Detention Facility.[8] There, Mr. Taylor was placed in the custody of the Madison County Sheriff's Department.[9]

Mr. Taylor was booked and searched around 9:45 p.m., taken to the holding area, and handcuffed.[10] He was questioned by an unidentified female deputy in the presence of Deputy Abraham Lindsey.[11] Mr. Taylor was asked for identifying information, but responded with "gibberish."[12] Deputy Lindsey grabbed Mr. Taylor, forced his face down, onto the surface of the counter, and restrained him in that position.[13] Mr. Taylor attempted to spit on one of the deputies. Another deputy, believed to be Sergeant Ewen Weber, kneed Mr. Taylor in the stomach.[14]

Sergeant Weber and Deputy Lindsey then dragged Mr. Taylor, while he was

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* ¶ 18.
[9] *Id.* ¶ 19.
[10] Doc. no. 1 (Complaint) ¶¶ 20-21.
[11] *Id.* ¶ 22.
[12] *Id.* ¶ 23.
[13] *Id.* ¶ 24.
[14] *Id.*

still handcuffed, into a holding cell.[15] Sergeant Weber and/or Deputy Lindsey called for backup, and two deputies, believed to be Ryan Byrd and Wyatt Luster, went to the holding cell into which Mr. Taylor had been dragged.[16]

Detainees in the holding area heard the sound of the deputies "tasering" Mr. Taylor.[17] They heard Mr. Taylor grunting, and the deputies yelling at him to "get the fuck down."[18] The deputies also deployed pepper spray while attempting to subdue Mr. Taylor.[19] The holding area filled with fumes, and detainees in the area were moved to a back hallway.[20] The deputies left the holding cell, and were observed by other detainees as being "out of breath."[21]

A witness observed Mr. Taylor in the holding cell, wearing only underwear and still handcuffed.[22] He was sweaty and his eyes were red.[23] Defendant Katrina Allen, a nurse, walked past the cell, but did not attend to Mr. Taylor.[24] The Madison County Sheriff's Department released the following statement:

---

[15] *Id.* ¶ 25.
[16] Doc. no. 1 (Complaint) ¶ 26.
[17] *Id.* ¶ 27.
[18] *Id.*
[19] *Id.* ¶ 28.
[20] *Id.*
[21] *Id.* ¶ 29.
[22] Doc. no. 1 (Complaint) ¶ 30.
[23] *Id.*
[24] *Id.* ¶ 31.

> Mr. Taylor was placed into a single cell and was found unresponsive at 4:10 p[.m.] on February 26, 2020 by jail personnel. HEMSI was notified, but the inmate was later pronounced dead. There were no signs of any injuries or trauma to Mr. Taylor, and it had been approximately 30 minutes since his last cell check.

Doc. no. 1 (Complaint) ¶ 32 (alteration supplied).

## II.  STANDARD OF REVIEW

The relevant portion of the Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That statement must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S. at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."

*Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a compliant is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 409 F.3d at 157–58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then*

6

*determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alteration supplied). Based upon *Iqbal*, the Eleventh Circuit has instructed courts to use a two-step framework to test the sufficiency of the pleadings:

> First, we identify the allegations that are "no more than conclusions." Conclusory allegations are not entitled to the assumption of truth. Second, after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations "plausibly give rise to an entitlement to relief.

*McCullough v. Finley*, 807 F.3d 1324, 1333 (11th Cir. 2018).

### III. DISCUSSION

Brooks and the deputies have filed separate motions to dismiss, but assert some of the same arguments. The following opinion will initially address the common arguments, before turning to the arguments specific to Brooks or to the deputies.

**A.    Shotgun Pleading**

Brooks and the deputies contend that plaintiff's complaint is an impermissible "shotgun" pleading. The Federal Rules only require a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That requirement is embellished by Rule 10, which states that a plaintiff must "state [her] claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b) (alteration

supplied). So-called "shotgun pleadings" violate those rules because they "fail to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Sheriff's Department*, 792 F.3d 1313, 1323 (11th Cir. 2015) (ellipsis supplied).

The Eleventh Circuit has repeatedly condemned shotgun pleadings, and demonstrated "little tolerance" for them. *See, e,g.*, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018); *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008) (listing numerous cases). Shotgun pleadings "waste scarce judicial resources, 'inexorably broaden[ ] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[ ] the public's respect for the courts.'" *Vibe Micro*, 878 F.3d at 1295 (quoting *Davis*, 516 F.3d at 981-83) (alterations in original).

The Eleventh Circuit's opinion in the *Weiland* case, *supra*, identified four categories of shotgun pleadings:

> **[1]** The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. **[2]** The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. **[3]** The third type of shotgun pleading is one that commits the

> sin of not separating into a different count each cause of action or claim of relief.  **[4]** Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1321-23 (bracketed alterations and ellipsis supplied, footnotes omitted).

Plaintiff's complaint begins with a section entitled "Introduction," consisting of three and one-half pages of unnumbered paragraphs.  As noted above, Rule 10 requires a plaintiff to state her claim in numbered paragraphs.  Much of the information in the "Introduction" is also contained in the section titled "Factual Allegations." That information is therefore redundant and due to be stricken under Federal Rule of Civil Procedure 12(f).[25]  To the extent that the remaining material is capable of being fashioned into **numbered** *factual*, rather than conclusory, allegations, plaintiff may amend her complaint accordingly.

Defendants also contend that plaintiff's complaint is an impermissible "shotgun pleading" because it re-alleges the factual assertions in paragraphs 1 through 34 in each of the five counts of the complaint.  Defendants argue that this practice is forbidden by the Eleventh Circuit's decision in *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015).

---

[25] That rule states: "The court may strike from a pleading an insufficient defense or any *redundant*, immaterial, impertinent, or scandalous matter," and the court may act on its own.

As previously stated, in *Weiland*, the Eleventh Circuit condemned complaints "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. That is not the case here. Plaintiff's factual allegations clearly and concisely describe the parties and the events giving rise to her claim. The facts of this case are not complex, and incorporating all of the factual allegations into each count does not, in itself, create confusion.

Other aspects of the complaint, however, need to be clarified. Defendants correctly argue that plaintiff's complaint is deficient because multiple claims are asserted against multiple defendants within the same count. Count I is labeled "Violation of the Fourth, Fifth, Eighth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983," and is brought against defendants Brooks, Byrd, Lindsey, Luster, and Weber.[26] Within that count, plaintiff alleges that Byrd, Lindsey, Luster, and Weber used excessive force against Taylor, and that those defendants deprived Taylor of substantive and procedural due process. Also within that count, plaintiff alleges that Brooks violated Taylor's constitutional rights in various ways.[27] This manner of pleading is unacceptable.

---

[26] Doc. no. 1 (Complaint), at ECF 10.

[27] *Id.* ¶ 42.

In addition, although the point is not raised by defendants, plaintiff cannot maintain claims under the Fifth or Eighth Amendments. The Fifth Amendment applies only to federal actors. *See Weiland*, 792 F.3d at 1328 ("The Fifth Amendment is out because it protects a citizen's rights against infringement by the federal government, not by state government.") (citing *Riley v. Camp*, 130 F.3d 958, 972 n.19) (11th Cir. 1997), and *Buxton v. Plant City*, 871 F.2d 1037, 1041 (11th Cir. 1989)). Likewise, the Eighth Amendment is not a basis for plaintiff's claims because Mr. Taylor had not been convicted. *Id.* ("[T]he Eighth Amendment is out because it applies only after a citizen has been convicted of a crime.") (citing *United States v. Myers*, 972 F.2d 1566, 1571 (11th Cir. 1992)).

Of the remaining theories, each claim in Count I should be alleged in a separate count. For example, the Fourteenth Amendment claim against the deputies should be separate from any Fourteenth Amendment claim against Brooks, and so on.

**B.    Failure to Allege a Cause of Death**

The deputies argue that plaintiff's failure to allege a *specific cause* of death requires dismissal of her complaint. Plaintiff contends that she has sufficiently alleged that the deputies' actions or inactions *caused* Mr. Taylor's death. The court agrees. Plaintiff's complaint contains the following allegations:

24.    Deputy Lindsey, standing beside Mr. Taylor, grabbed Mr. Taylor

> and slammed Mr. Taylor face down on the counter and held him there. In response, Mr. Taylor tried to spit on one of the Deputies and a male Deputy, believed to be Sergeant Ewen Weber, hit Mr. Taylor in the stomach with his knee.
>
> 25. Sergeant Weber and Deputy Lindsey started dragging Mr. Taylor into a single cell. Throughout this, Mr. Taylor was still handcuffed.
>
>     \*   \*   \*   \*
>
> 27. The detainees in the holding area could hear the Deputies with the Madison County Sheriff's Department tasing Mr. Taylor. Mr. Taylor was grunting every time they tased him. The four Deputies were screaming at Mr. Taylor to "Get the Fuck Down!"
>
> 28. At some point the four Deputies sprayed Mr. Taylor with pepper spray. The holding area filled with noxious gas to the point where the other detainees had to be moved into a back hallway.
>
>     \*   \*   \*   \*
>
> 33. The actions and inactions of Defendants Chad Brooks, Ryan Byrd, Abraham Lindsey, Wyatt Luster, Ewen Weber, and/or Katrina Allen, Mr. Taylor suffered severe personal injuries resulting in his death [*sic*].

Doc. no. 1 (Complaint). The foregoing allegations adequately place the deputies on notice that plaintiff claims that they caused Mr. Taylor's death by physically slamming his face into the counter, kneeing him in the stomach, dragging him while still handcuffed to a cell, tasering him repeatedly, and deploying pepper spray.

C. **Abated/Abandoned Claims**

The deputies argue that those claims of plaintiff which were not filed before Mr. Taylor's death — *i.e.*, the Count I claims contained in paragraph 44 of the complaint,[28] Count IV for negligence, and Count V for recklessness/wantonness — are abated by Alabama's survivorship law, as embodied in Alabama Code § 6-5-462. *See Gilliam v. City of Prattville*, 639 F.3d 1041, 1050 (11th Cir. 2011). Plaintiff did not address this argument in her response to the deputies' motion to dismiss. Therefore, plaintiff is deemed to have abandoned those claims. *See Greenlaw v. United States*, 554 U.S. 237, 244 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.") .

D. **Supervisory Liability**

Defendant Brooks contends that plaintiff has not stated a claim for supervisory liability.[29] Supervisory liability lies where the defendant personally participates in the

---

[28] Paragraph 44 reads as follows:

> Specifically, these Defendants violated Mr. Taylor's Fourth, Fifth, Eighth, and Fourteenth Amendment rights to Substantive and Procedural Due Process as a pre-trial detainee, including the right not to be subjected to cruel and unusual punishment during detention and the right not to be subjected to conditions which constitute punishment without a hearing.

Doc. no. 1 (Complaint) ¶ 44.

[29] Doc. no. 6 (Brief in Support of Motion to Dismiss of Defendant Chad Brooks), at 7-18.

unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions.  *See West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007). Plaintiff has not alleged that Brooks personally participated in the events that form the basis of this action.  Therefore, plaintiff must demonstrate a causal connection. Plaintiff may establish such a connection

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  Alternatively, the causal connection may be established when a supervisor's custom or policy. . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotations omitted, alteration supplied).  "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation omitted).  However, "a single constitutional violation may result in . . . liability when there is 'sufficient independent proof that the *moving force of the violation* was a [ ] policy or custom.'" *Vineyard v. County of Murray*, 990 F.2d 1207, 1212 (11th Cir. 1993).

Plaintiff's complaint alleges that, "[w]hile there are rules about beating, tasing

14

and pepper spraying inmates at the MCDF [Madison County Detention Facility] while they are handcuffed, Mr. Brooks failed to enforce these policies or insist the Deputies under his supervision follow them."[30]  She also alleges that

> Defendant Brooks, in his official capacity, did not follow, implement or establish policies designed to protect detainees suffering from mental illness from physical abuse at the hands of corrections officers; did not follow, implement or establish adequate mechanisms to monitor or supervise corrections officers while they interacted with incompetent inmates; and did not install adequate safeguards in the MCDF to monitor and supervise corrections officers while they interacted with incompetent inmates.

Doc. no. 1 (Complaint) ¶ 42.

Brooks argues that plaintiff has failed to state a claim for supervisory liability because she has not alleged a history of widespread abuse, or a prior "flagrant, persistent pattern of violations," that would constitute a policy or custom.  *See Goebert v. Lee County*, 510 F.3d 1312, 1332 (11th Cir. 2007).  Plaintiff relies on *Vineyard* for the proposition that a single occurrence can suffice for supervisory liability.

Brooks is correct that plaintiff's allegations as they stand do not support a theory of supervisory liability.  The allegations of the complaint quoted above are conclusory, and are not entitled to the presumption of truth under *Iqbal*. Disregarding those allegations, as the court must, the complaint does not contain any factual

---

[30] Doc. no. 1 (Complaint) ¶ 15 (alterations supplied).

allegations whatsoever to support a claim of supervisory liability. *Cf. Harper v. Lawrence County*, 592 F.3d 1227, 1236 (11th Cir. 2010) (the plaintiff provided specific *factual* support for allegations that the defendants had customs or policies that resulted in harm to the decedent). Even so, plaintiff will be allowed one opportunity to attempt to cure that deficiency with an amendment to her complaint.

### E.      Wrongful Death

Brooks also argues that plaintiff cannot state a claim against him for wrongful death. Brooks refers to this claim as "Count V" in his brief,[31] but Count V of the complaint is for "recklessness/wantonness." Count III brings a claim for wrongful death, but not against Brooks. As such, the court need not address his arguments on that issue.

### F.      Injunctive Relief

Brooks contends that plaintiff's claim for injunctive relief should be stricken because she has failed to plead a viable § 1983 claim against him. At this early stage of the litigation, the court has no way of knowing the scope of permanent injunctive relief that might be appropriate upon entry of a final judgment. If plaintiff ultimately prevails, it is possible that a permanent injunction could be tailored to remedy the specific harms shown by the available evidence. Accordingly, the court will not

---

[31] Doc. no. 6 (Brief in Support of Motion to Dismiss of Defendant Chad Brooks), at 21-23.

dismiss plaintiff's claims for injunctive relief at this stage.

### G.   Qualified Immunity

Because plaintiff will be afforded the opportunity to amend her complaint, the court will deny that aspect of the deputies' motion seeking dismissal on the ground of qualified immunity, without prejudice to reassert that defense following plaintiff's filing of an amended complaint.

### H.   Other Issues

In the amended complaint, plaintiff must clarify the relief sought against *each* defendant, separately. For example, plaintiff states in paragraph 2 of the complaint that Brooks "is sued in his official capacity only, seeking injunctive relief exclusively."[32] However, section (e), under the heading "Relief Requested," asks the court to "[e]nter judgment in favor of Plaintiff for compensatory and punitive damages, as allowed by law against *each* Defendant, jointly and severally."[33]

## IV.  CONCLUSION

In accordance with the foregoing, the motions to dismiss filed by defendants are GRANTED in part, and DENIED in part. Plaintiff will be allowed to file, not later than the close of business on July 19, 2022, an amended complaint curing the

---

[32] Doc. no. 1 (Complaint) ¶ 2.

[33] *Id.* at ECF 16 (alteration & emphasis supplied).

deficiencies addressed in this opinion.

Defendants' motion to stay discovery is GRANTED, pending the filing of plaintiff's amended complaint and the resolution of any subsequent motions to dismiss.

**DONE** and **ORDERED** this 5th day of July, 2022.

_____
Senior United States District Judge